## Duff v. McDonough et al., Appellants.

*Equity—Bill to compel conveyance of real estate—Evidence.*

An owner of real estate, subject to a mortgage, finding that he was unable to sell the land, or pay anything on the mortgage, requested the mortgagee to take the land for the mortgage. The mortgagee consented, and took possession of the land as owner, but without taking a deed for it. A tenant in possession attorned to the mortgagee by paying his rent. About a month afterwards Ross the original owner made a deed for the land to McDonough. McDonough made no inquiry of the tenant before taking the deed, and for ten years took no steps to obtain possession of the property. The mortgagee discovering McDonough's deed on record, filed a bill in equity on Oct. 11, 1888, to clear the cloud from his title, and the bill was indexed on the same day on the judgment docket. The bill was served on McDonough on Oct. 13, 1888. On Oct. 12, 1888, McDonough made a deed to Mapes, one of the defendants. Mapes made no inquiry from the tenant as to the ownership of the land. The master found that the conveyance to McDonough was not a bona fide transaction for a valuable consideration. The court, sustaining the report of the master, entered a decree requiring McDonough and Mapes to execute a release of their pretended title to the land. *Held*, not to be error.

*Ejectment—Lis pendens—Act of June 15, 1871.*

Query, whether the act of June 15, 1871, P. L. 387, makes the indexing of a bill in equity record notice from the commencement of the action.

Argued Oct. 24, 1892. Appeal, No. 332, Oct. T., 1891, by defendants, T. M. McDonough et al., from decree of C. P. No. 1, Allegheny Co., Dec. T., 1888, No. 323, in favor of plaintiff, William H. Duff. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Bill in equity for conveyance of real estate.

The case was referred to John D. Shafer, Esq., as master, who reported that, on Aug. 1, 1877, the land in controversy was conveyed to Joseph Ross, subject to a mortgage, upon which there were large arrears of the interest due. Ross was unable to sell the land, or to pay anything on account of the mortgage. He accordingly asked William H. Duff, the mortgagee, to take the land off of his hands. [On Jan. 12, 1878, Duff agreed to take the land for the mortgage, and Ross, apparently by way of transferring the land to Duff, turned over to him the deed from his own grantor,] [1] [but made no deed of his own to

Duff. Some time before April 1, 1878, an agent of Duff took possession and Sudikum, the tenant then in possession, paid rent from that time to Duff. On April 29, 1878, Ross conveyed the land by deed to T. M. McDonough, the consideration stated in the deed being $12,000. [McDonough made no inquiries from the tenant, and made no attempt to obtain possession of the property, nor did he make any inquiry of Duff as to whether the interest on the mortgage or the mortgage itself was being paid.] [5] The master found that [the deed from Ross to McDonough was not a bona fide conveyance for a valuable consideration.] [6] On May 23, 1882, the deed of Ross to McDonough was recorded.

The master reported further facts as follows:

" In September, 1888, W. H. Duff by accident discovered the existence on record of the Ross deed to McDonough; he then became alive to the fact that he had no deed from Ross. On Oct. 6, 1888, he obtained from Ross, in Nashville, Tenn., where Ross lived, a deed for the land, which is now of record. Ross asserted at this time that he had never given a deed to McDonough.

" On Oct. 11, 1888, W. H. Duff having returned from Nashville, went with his brother, R. P. Duff, to McDonough's office to see if he claimed the land, and on that day the bill was filed, and was indexed on the judgment docket against McDonough. The bill was served on McDonough on Oct. 13, 1888.

" On Oct. 12, 1888, McDonough made a deed for the land to Charles T. Mapes, one of the respondents, he being added as a party by amended bill filed Feb. 28, 1889. This was the day following the filing and indexing of the bill. Mapes says he paid McDonough $1,000 in cash on that day, and gave a mortgage for $3,000, which he paid off in a month or so. He says that he looked at the property and saw the tenant. He does not say that he asked the tenant under whom or by what title he held. At a hearing before a justice concerning this land he testified that he had paid all of the purchase money in cash at the time of getting his deed. The list of liens against McDonough, put in evidence before the master, shows a large number of judgments standing against McDonough at the time of this deed, which were liens on this land. In view of all the circumstances, the master has no hesitation in characterizing the whole

account given by McDonough and Mapes of the sale to Mapes as incredible. Mapes claims to have had the title examined and found it all right, yet the list of liens against McDonough produced in evidence shows judgments open and unsatisfied against McDonough at that time more than the value of the land.

" It is contended on behalf of the defendants that the answer of McDonough, in so far as it is responsive to the bill, has not been overcome by the requisite quantum of evidence. In the fourth paragraph of his answer, McDonough responsively alleges that on April 29, 1878, when he got his deed, the complainant was not in possession of the land. It plainly appears by the testimony of J. R. McGinley and Mrs. Sudikum that he was in possession at that time. In the same paragraph he alleges that the complainant admitted there was only $400 due on the mortgage. This, in his own testimony, he admits was only hearsay.

" In the fifth paragraph of his answer, he expressly denies the averments of the fifth paragraph of the bill. This is a denial that Ross delivered possession of the land in satisfaction of the mortgage, which is contradicted by W. H. Duff and McGinley; a denial that Duff has remained in possession to the present time, that it was assessed to Duff, that he had paid the taxes and got the rent, all of which is practically admitted by McDonough in his testimony.

" He further avers that Ross gave him full and undisputed possession of the property at the time of getting the deed from Ross. His own testimony, however, shows that he never had any possession. In his testimony he reiterates the statement of the bill as to the $400 only being due on the mortgage, here showing that he did not get this information from Duff, as the bill alleges, but that it was hearsay.

" Upon this statement of facts the following questions of law arise: (1) If the bona fides of the conveyance to Mapes is conceded, was he affected with constructive notice of the contents of the bill by lis pendens? (2) Was McDonough affected with notice of such title as Duff had in April, 1878, when he received the deed from Ross, and was Mapes affected with notice of the same? (3) What title had Duff at that time?

" First. As to plaintiff's claim of the notice to Mapes by lis

pendens: The plaintiff contends that the filing of a bill in equity is notice to all interested in the subject-matter, citing Fessler's Ap., 75 Pa. 483, and Diamond v. Lawrence Co., 37 Pa. 353. In these cases, however, it appears that the notice by lis pendens does not begin from the filing of the bill but from the service of the subpœna, the equivalent of which in our practice is the service of a copy of the bill. The bill herein not having been served on McDonough when Mapes took his deed, the bill itself was no notice to Mapes. The plaintiffs, however, refer to the act of June 15, 1871, P. L. 387. This act provides that when, among other things, any petition to declare void any deed, etc., or any other proceeding, by which purchasers of real estate would be deemed to have had constructive notice, shall have been commenced, etc., it shall be entered on the judgment index. The act does not appear to make the entry on the judgment index notice to anyone, nor to provide that the lis pendens should not be notice unless so indexed, differing in this respect from the act of 1856, establishing the Ejectment Index, which provides that the pendency of the action shall not be notice unless indexed.

"The act of 1871, however, provides that when any action is 'commenced' it shall be indexed, and that it shall be certified as a lien in any certificate of liens required to be made, which possibly indicates an intention on the part of the legislature to make the notice begin from the commencement of the action. There does not appear to have been any case decided upon this point since the act of 1871. It is, therefore, at least very doubtful if the indexing of the bill on the judgment docket is notice to Mapes.

"As to the second question, [the possession of Duff's tenant was notice to McDonough of Duff's title, whatever it was.] [11] That this tenant originally came in under a lease from Ross makes no difference: Anderson v. Brinser, 129 Pa. 376. [When Mapes took the deed from McDonough, in 1888, the same rule was applicable to him, it not appearing that he made any inquiry of the tenant in possession.] [12]

"Third. As to Duff's title: [Duff was in possession under a parol surrender of the equity of redemption.] [13] It does not appear that he made improvements on the land or that anything was done which would have made it inequitable to rescind this

parol conveyance. If Ross had undertaken to repudiate the transaction and to recover the possession, he might have done so on payment of the mortgage debt. If, therefore, the deed of Ross to McDonough was given and received bona fide and for a valuable consideration, it seems that McDonough would be placed by it in the same position as Ross held before. It is argued on behalf of the plaintiff that because the parol contract between Duff and Ross is admitted and affirmed by both parties to it, it is legal and valid, and the defendant, McDonough, cannot set up the statute of frauds to avoid it, and the cases of Christy v. Brien, 14 Pa. 248; Houser v. Lamont, 55 Id. 317, and others, were cited in support of this contention. These cases, however, seem only to go to the extent of holding that an intruder on the possession cannot set up the bar of the statute when both parties to the contract are willing to abide by it.

" If, however, McDonough was put in Ross's place, by this deed he has as good a right to plead the statute as Ross himself would have had, and Ross's subsequent admission would not affect him.

" If the master's finding of fact in regard to the character of the conveyance from Ross to Duff should be held to be made upon sufficient evidence, of which he has some doubt, and should be approved, then it will follow from that and the other conclusions of fact and law, that the plaintiff is entitled to the relief prayed for in this bill, and the defendants should be required to reconvey to the plaintiff.

" [If, on the other hand, it be determined that that finding of fact is not justified by the evidence, then it will appear that the land in question belongs to Mapes, that Duff has a mortgage on it, and having been in possession, taking the profits, Duff should account with Mapes as mortgagee in possession.] [15] With the question of jurisdiction in equity the master has nothing to do, that having been settled upon demurrer.

" The master having found, however, against the validity of the deed to McDonough, recommends that [a decree be made granting to the plaintiff the relief prayed for in the second prayer of his bill,] [14] and [that the defendants pay the costs of this proceeding."] [20]

Exceptions to the master's report, among others as indicated

1893.]        Exceptions to Master's Report—Opinion of the Court.

by brackets, were overruled by the court, and a decree entered requiring McDonough and Mapes to release to Duff their pretended title.

*Errors assigned* were decree, and dismissal of exceptions, quoting them respectively.

*James Fitzsimmons, John S. Robb* with him, for appellants, cited: Barclay's Ap., 93 Pa. 50; Messimer's Ap., 92 Pa. 168; Sandford v. De Camp, 8 Watts, 542.

*A. M. Brown, R. E. Stewart* with him, for appellee, cited: Christy v. Brien, 14 Pa. 248; Rockland & Venango Coal Co. v. McCalmont, 72 Pa. 226; Dovey's Ap., 97 Pa. 153.

PER CURIAM, January 3, 1893:

The decree is affirmed and the appeal dismissed at the costs of the appellants.

## Gallagher et al., Appellants, v. Swan.

*Married women—Contract—Nonsuit—Evidence.*

A nonsuit is properly entered in an action against a married woman for supplies furnished to a hotel, where it appeared that the goods were not furnished upon her credit, that they were charged to her husband, and defendant denied that she had any interest in the business, and her testimony was uncontradicted.

Argued Oct. 24, 1892.    Appeal, No. 331, Oct. T., 1891, by plaintiffs, Gallagher Brothers, from order of C. P. No. 1, Allegheny Co., March T., 1890, No. 510, entering judgment of nonsuit in favor of defendant, Isabel A. Swan.    Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit for goods sold and delivered.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were (1) entry of nonsuit and (2) refusal to take it off.