# Tabor Street (No. 1).

*Road law—Dedication—Recording of deeds—Notice.*
Where an owner of land sells lots on instalments reserving title to himself until the last instalment is paid, and after such instalments are paid, but before deeds are executed to the purchasers, he executes an absolute deed of dedication to the public of a street on which the lots abut, and indemnifies the city against all damages caused by the grading of the street, and the deed of dedication is accepted by the city and duly recorded, the deed and the release are binding upon the purchasers from the owner whose deeds are executed and recorded after the recording of the deed of dedication.

Whatever puts a party upon inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding.

Argued Dec. 16, 1903. Appeal, No. 227, Oct. T., 1903, by the city of Philadelphia, from order of C. P. No. 1, Phila. Co., Sept. T., 1901, No. 4165, dismissing exceptions to report of viewers in the matter of the Change of Grade of Tabor Street

from Fifth Street to Sixth Street.    Before RICE, P. J., BEAVER,
ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.
Reversed.

Exception to report of viewers.
The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in dismissing various exceptions to re-
port of viewers.

*John H. Maurer*, assistant city solicitor, with him *John L.
Kinsey*, city solicitor, for appellant.—The facts are that neither
at the date of the deed (June 16, 1898) nor on June 18, 1898,
nor at the time (July 18, 1898) of the making of the agreement
with the city pursuant to ordinance of April 7, 1898, was there
a legal Tabor street or road.    That street, although not physi-
cally closed, had been vacated by the confirmation of the re-
vised plan on December 19, 1892 : Wetherill v. Penna. Rail-
road Co., 195 Pa. 156 ; Butler Street, 19 Pa. Superior Ct. 48.

The release and waiver of damages mentioned in the deed
of dedication must be held to refer to the physical grading
of Tabor street to the lines and grades confirmed July 25,
1898.

The deed of dedication having been recorded, the appellees
had legal notice of it and could have rescinded their agree-
ments for the purchase of the lots : Evans v. Taylor, 177 Pa.
286.

*Henry W. Scarborough*, for appellees.—The dedication is
void as to equitable owners : Costigan v. Penna. R. R. Co., 54
N. J. L. 233 (23 Atl. Repr. 810).

The cause of action did not arise until the grade was physi-
cally changed in the spring of 1901 : Clark v. Philadelphia,
171 Pa. 30 ; Norwood Street, 12 Pa. Dist. Rep. 309.

Damages are not assignable nor transferable and therefore
not waivable : Marsh v. Railway Co., 204 Pa. 229 ; North
Chicago St. R. R. Co. v. Ackley, 171 Ill. 100 (46 N. E. Repr.
222) ; Losch's App., 109 Pa. 72.

The clause waiving damages to be caused by the prospec-
tive change of grade is not a covenant running with the land :
Losch's App., 109 Pa. 72 ; Costigan v. Penna. R. R. Co., 54

N. J. L. 233 (23 Atl. Repr. 810); Brewer v. Marshall, 19 N. J. Eq. 537; Leech v. Schweder, L. R. 9 Ch. App. 463; Notes to Spencer's Case, 1 Smith L. C. (9th ed.) 199.

The paragraph of the deed of dedication, waiving the damages for the change of grade, is not within the protection of the recording acts: Fitler v. Shotwell, 7 W. & S. 14.

OPINION BY ORLADY, J., October 17, 1904:

From the record of this case and the agreement of counsel attached thereto, it appears that pursuant to an act of assembly dated April 20, 1869, P. L. 1191, Olney road was opened forty feet wide, and is included in the street now in controversy between Fifth and Sixth streets of the city of Philadelphia. By ordinances passed March 17, 1884, and March 15, 1887, this road was regularly placed upon the city plan as a public highway or street not exceeding sixty feet in width, confirmed by the board of surveyors on December 17, 1888, and the name changed to Tabor street.

In 1892 the department of public works, under the authority of ordinances, revised the city plan and Tabor street was stricken therefrom and Clarkson avenue was laid on other ground and substituted therefor, which proceedings were confirmed by the board of surveyors on December 19, 1892. On April 7, 1898, an ordinance was duly enacted by which Clarkson avenue was stricken from the city plan and Tabor street was regularly reinstated (providing, " that the owners of ground within the lines of said streets shall first enter into an agreement satisfactory to the city solicitor indemnifying the city against all damages by reason of the striking of said Clarkson avenue from the plan and the placing thereon of Tabor street,") upon the same location as said street had been placed upon the city plan on December 17, 1888. Pursuant to this condition A. Howard Ritter, who was at the time the owner in fee of the north half of Tabor street between Fifth and Sixth streets (and the land abutting thereon), delivered to the search clerk of the bureau of surveys a deed of dedication dated June 16, 1898, for " all that certain lot or piece of ground forming the north half of the bed of Tabor street or road from Fifth street to Sixth street."

In consideration " for and of the advantage to them (the

grantors) accruing as well as for divers considerations affecting the public welfare which they seek to advance" Ritter and wife granted, bargained, sold, and confirmed to the city of Philadelphia, its successors and assigns, the land described "to and for the only proper use and behoof of the city, its successors and assigns, forever for a public street or highway and for no other purpose, but to the same extent and with the same effect as if the said street had been opened by a decree of the court of quarter sessions for the county of Philadelphia upon proceedings had for the purpose under the road laws of the commonwealth." A release was incorporated in the deed of dedication as follows : "and the said A. Howard Ritter, being the owner of land dedicated for the bed of the above described street and of the land abutting thereon, doth further expressly agree that all claims for damages to or by reason of any physical grading of said street, in conformity with the grade now established are absolutely released, waived, and discharged by the parties hereto, their heirs, executors, and assigns." This deed was received in accordance with the custom of the bureau of surveys and transmitted to other departments of the city for examination and report thereon. Pending this examination the grades were established to which Tabor street was physically graded in 1901. The final revision placing Tabor street upon the city plan and establishing its grades was confirmed by the board of surveyors on July 25, 1898, and the deed of Ritter to the city was accepted by the bureau of surveyors on August 1, 1898, and duly recorded on September 6, 1898.

It further appears that Ritter sold to the appellees from his plan certain lots abutting on the north side of Tabor street, by articles of agreement (all being similar in terms) by which the grantees therein were to pay the purchase price in monthly instalments. Ritter covenanted in each agreement, that when one half the purchase money was paid he would execute and deliver to the respective grantee a deed in the usual form in fee simple for his lot, and the remaining one half of the purchase money should be secured by bond and mortgage. In each agreement it was stipulated that the title to the lot should not pass until all payments were made according to the terms of the agreement and a deed for the lot delivered.

The agreement of purchase by Schweitzer is dated June 19, 1893; he had paid his one half of the purchase money and became entitled to a deed for his lot on September 4, 1895. His deed bears date September 19, 1898, and was recorded the next day. The agreement of Barbara Meyer is dated November 27, 1893, upon which she paid installments so as to entitle her to a deed May 29, 1896; her deed bears date of May 15, 1899, and was recorded June 9, 1899. The agreement of George W. Rudolph is dated November 24, 1893, upon which he made payments so as to entitle him to a deed on August 25, 1898; his deed is dated July 10, 1899, and was recorded on July 21, 1899. No reason is given for Ritter's delay in tendering, or for the appellees in not demanding, the deeds at the time stipulated in the agreements and thus perfecting the title to the lots in the appellees. The city nor its officials did not have knowledge, actual or constructive, of the existence of the unrecorded agreements of Ritter with the appellees until the deeds for the respective properties were placed on record. From these dates it conclusively appears that at the time when the city accepted Ritter's deed of dedication for the north half of Tabor street and the release of damages, etc., he was the registered owner of the abutting property; that he had the legal title to this abutting property, and that there was no known unrecorded outstanding charge against his title or the land: Fifth Street, 22 Pa. Superior Ct. 214. The existence of Tabor street, which was a boundary of the appellees' lots, could only be legally ascertained by a search of the proper reports, where its location, width and grade were fully shown prior to their securing title to the lots. So far as action by the city was concerned that record was complete, and disclosed that the dedication and established grade were essential parts of the consideration for the location of the street. All damages were liquidated by the parties as a part of the consideration of the deed, and the right to them passed to the city by Ritter's deed and release, so that the appellees are not entitled to assert it. See also Wetherill v. Penna. R. R. Co., 195 Pa. 156, and Butler Street, 19 Pa. Superior Ct. 48.

The deed of Ritter was more than a release of damages by an abutting owner for a prospective change of grade. It was an absolute conveyance by an abutting owner of the north half

of Tabor street, between Fifth and Sixth streets, for highway purposes, in conformity with the grade then established for a good consideration, and it gave to the city the same title to and power over the land covered by the grant that it would have over a street opened by adverse proceedings : Morris v. Philadelphia, 199 Pa. 357.

In the absence of evidence to the contrary the law presumes that the date of the deed is the date of its delivery, but it is no more than a presumption, and in this case the deed did not become operative until it was formally accepted. As a condition precedent to its acceptance a special agreement was exacted from Ritter and another abutting owner to indemnify the city against all damages that might be claimed or awarded by reason of striking Clarkson avenue off the city plan and placing Tabor street thereon. These appellees did not have a legal title to any abutting land when Ritter sold the north half of the body of the street to the city. The handing of the deed by Ritter to the bureau of surveys was but a step toward its completed delivery. It was on a blank furnished by the city which clearly showed by its indorsements that it required the approval " as to form " by the city solicitor and " by the board of surveyors," by the chief engineer and surveyor before it would be accepted. Furthermore, on that date (June 16, 1898), Tabor street did not have any existence. The plan of lots of Ritter's land, the ordinance of April 7, 1898, the agreement between Ritter and the city, the revision of the city plan on July 25, 1898, and fixing the grades to which the street was physically graded in 1901, determines beyond question that the deed of Ritter (and release of damages) was held with his knowledge and consent by the city until the conditions required by the ordinance should be met, and that the deed became operative (on August 1), 1898, when it was formally accepted by the city, and the rights of the appellees are to be determined by the conditions existing as of that date. Had the proceeding to open been in the quarter sessions and the viewers met on that date, Ritter's release of damages would bar the appellees' claim : Righter v. Philadelphia, 161 Pa. 73.

The appellees' lots were designated in the article of agreement as being " on the plan of the lands " of Ritter, and in the

deeds which they accepted the lots were given a defined measurement "in front or breadth on the said Tabor street." The plan showed the location of the lots with their width, depth and also the location of the streets, to which the owners would be held, prima facie, to own to the middle of the highway, subject to the easement of the right of way in the public (Grier v. Sampson, 27 Pa. 183) if the street was not expressly or by clear implication reserved (Cox v. Freedley, 33 Pa. 124; Quicksall v. Phila., 177 Pa. 301; Osterheldt v. Phila., 195 Pa. 355), and thereby the plan of the lots was a part of the deed: Witman v. Smeltzer, 16 Pa. Superior Ct. 285. After making the contracts of purchase, and with legal knowledge of the plan of lots, each appellee had substantially five years in which to examine and ascertain the location and boundaries of each lot and also the rights in the streets on which the lot abutted. The facts are not controverted and the question whether they constitute sufficient notice is for the court. The rule of constructive notice has been long and well settled,—that whatever puts a party upon inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding: Maul v. Rider, 59 Pa. 167; Hottenstein v. Lerch, 104 Pa. 454. The means of knowledge were easily accessible to these purchasers, the recital of the release of damages in the deed of Ritter to the city was one source of knowledge, but not necessarily the only one. They either had actual knowledge, or actual notice of such facts as by the exercise of due diligence would have led them to the knowledge of the city's rights in Tabor street before they took their titles from Ritter, or if this were not so, then, their want of knowledge of the facts was the result of such culpable negligence that they would be equally bound. As was said in Maul v. Rider, supra, there was ample reason to awaken inquiry and direct diligence in a channel in which it would be successful.

Ritter clearly defined his grant in his deed after the street had been opened and its grade established, and there was no subsequent deviation from plan or grade though the actual physical work on the ground was not done until 1901. The claim of a property owner for the opening and grading of a

street must be asserted as an entirety, and if he omit any part
of it which he could legally assert at that time he is estopped
from afterwards setting it up. The value of the land taken,
the condition of what remains as affected by the lines of the
street and the elevation or depression of the natural surface
are elements in the calculation but they are not distinct claims.
The dedication of Tabor street, establishing its grade, and re-
leasing damages were cognate acts and the then abutting owner
was obliged to submit his whole claim for damages, embracing
both opening and grading and for consequential as well as di-
rect injuries : Jones v. Bangor Boro., 144 Pa. 638. All the
facts were made known by the records on August 1, 1899, when
the cause of action therefor was complete and all the damages
were included in the consideration of Ritter's deed to the city.
The general rule is that the cause of action arises when the in-
jury is complete and this has been uniformly applied to the
taking of property for public use from the case of Schuylkill
Nav. Co. v. Thoburn, 7 S. & R. 411, down to the present time :
O'Brien v. Phila., 150 Pa. 589. The claim for opening and
grading was not contingent upon disjoined municipal acts sepa-
rated in time so as to permit the claim for either opening or
grading to be withheld; both claims would have rightly been
considered by jurors appointed by the quarter sessions : Pusey
v. Allegheny City, 98 Pa. 522; Rodgers v. Phila., 181 Pa. 243;
Higgins v. Sharon Boro., 5 Pa. Superior Ct. 92. See Act of
May 26, 1891, P. L. 117, and Greentree Avenue, 21 Pa. Supe-
rior Ct. 177.

In Clark v. Philadelphia, 171 Pa. 30, it is held " the vigilance
of the city officers can in most cases protect the city's interests
by seeing that dedications of land or waivers of damages for
opening are not accepted unless they include waiver of damages
as to grade and that ordinances for opening shall also provide
for grading so that the acts shall be concurrent and claims for
both be necessarily presented in the same proceeding." This
is just what was done in this case by the city; the acceptance
of the deed of dedication was withheld until the proper or-
dinances were enacted and the grades established by the
official plan which was produced before the viewers and is filed
with their report, and the Act of May 26, 1891, P. L. 117,
provides that the award " shall include all damages due to the

grade at which said street or highway is to be opened or widened." The appellees took the title to their lots subject to the recorded deed and release of Ritter to the city and under their agreements with Ritter no legal title vested in them until they received their deeds from Ritter.

Howley v. Pittsburg, 204 Pa. 428, is not applicable under the facts of this case. In that case the street had been located upon the city plan by an ordinance approved January 12, 1891, and dedicated the same day. The grades were not established until January, 1896. The Act of May 26, 1891, P. L. 117, did not apply to the facts shown by that record. The sole question was whether an owner of land who acquired title after the passage of an ordinance authorizing the grading can recover for the injury to his property caused by the grading and it was held that he could. Whether the act of 1891 calls for a new rule for the assessment of damages caused by the grading of a street was expressly eliminated from the case then considered, and it was further held that the defendant in that case did not have standing to object to the plaintiff's right to recover inasmuch as the city had instituted the proceeding and had not filed exceptions to the report of the jury or taken an appeal from its decision. There was no evidence of an opening of the street after the passage of the act, and it did not apply.

The decree of the court below is reversed and the awards in favor of Barbara Meyer, A. B. Rudolph and Mary Joseph, and Charles, Peter and Katie Schweitzer, minors, by their next friend and mother, Mary Joseph, are stricken off.

