# Dörr, Appellant, *v.* Leippe et al.

*Equity—Hearings by successive chancellors—Finding of facts—Appeals.*

1. Where a chancellor hears most of the testimony in an equity case, and then dies, and his successor hears the remainder of the testimony and enters a decree from which an appeal is taken, the appellate court may be in as good a position to pass on the credibility of the witnesses, and to draw inferences from their evidence, as was the chancellor who entered the decree, but it is in no better position.

2. In such case the findings of fact by the chancellor who entered the decree will not be disturbed if they are based upon sufficient evidence.

*Deeds—Recognizance—Trusts and trustees — Imposing trust — Evidence—Promise—Oral trust—Trust ex maleficio.*

3. No oral trust as to real estate can be sustained on the ground of fraud in obtaining title except as a resulting trust raised by actual fraud on the part of the grantee, against the grantor.

4. Unkept promises of, and declarations, or misrepresentations by the grantee, which will create a trust ex maleficio, must be made before or at the time the legal title is acquired.

5. The evidence in support of a trust or confidence in the land must be clear, precise and convincing; a mere refusal to perform oral promises is not sufficient to raise such a trust.

6. Where a mother conveys land to a son on the oral promise by him not to part with it during her lifetime, doubted, whether such promise raises any trust.

7. If the son in violation of his promise conveys the land to innocent purchasers for value without notice of his promise to his mother, such grantees cannot be compelled to reconvey the land, nor will they be affected by a trust in favor of the mother, even if one existed.

8. In a suit by the mother against the son's grantees, the plaintiff cannot claim that the conveyance by the son was fraudulent, on the ground that the son was a German citizen, and the conveyance was made to prevent the confiscation of the land as his property.

9. In an equity suit by a mother who had conveyed land to her son under a parol promise on his part not to part with it in her lifetime, where the mother seeks a reconveyance from a grantee to whom the son had conveyed the land in violation of his promise,

the bill will not be dismissed, where it appears there is pending an issue to determine the validity of a judgment entered by defendant against plaintiff on a warrant of attorney in a lease signed by plaintiff, the chief contention being that the lease had been fraudulently obtained.

*Deeds—Recording acts—Notice—Inquiry.*

10. The recording of a deed by one holding title is not always sufficient to put one, claiming ownership, on inquiry.

Argued February 9, 1926. Appeal, No. 17, Jan. T., 1926, by plaintiff, from decree of C. P. Berks Co., Equity Docket, 1922, No. 1333, dismissing bill in equity, in case of Maria Dörr v. Emma L. Leippe, wife of Jacob A. Leippe, Jacob A. Leippe, her husband, James M. Fix and John Derr. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART and SCHAFFER, JJ. Decree reversed in part and affirmed in part.

Bill to declare trust and for reconveyance of real estate. Before WAGNER, J., and BIDDLE, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Bill dismissed as to Emma L. Leippe, Jacob A. Leippe and James M. Fix. Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting it.

*W. Horace Hepburn, Jr.,* and *E. E. Mather,* with them *Ralph E. G. Edenharter,* for appellant.—Even though there was of record a conveyance, a purchaser was bound to inquire as to the possession of the former owner: Brooke v. Border, 125 Pa. 470; Flitcraft v. Com. T. Ins. & T. Co., 211 Pa. 114.

The pendency of an action of ejectment would not prevent a court of equity giving complete relief where it had become necessary for the court in equity to intervene: Tide Water Pipe Co. v. Bell, 280 Pa. 104; Socher's App., 104 Pa. 609.

*H. P. Keiser,* for appellees.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, March 15, 1926:

Plaintiff filed a bill in equity against her son John Derr, claiming he was fixed with a trust as to certain real property which she had deeded to him, and against Emma L. Leippe, with her husband, Jacob A. Leippe, to the former of whom John Derr had conveyed the properties in question; James M. Fix, a grantee of one of the properties from the Leippes, also is included as a defendant. The court below dismissed the bill as to all the defendants except Derr, against whom it assessed the costs. Plaintiff has appealed; she raises no question concerning the extent of the relief granted against John Derr; her sole complaint is that relief was not decreed against the other defendants, who now hold legal titles to the real estate, of which she claims the equitable ownership.

After reading and minutely studying the some 260 printed pages of testimony, we not only agree with the court below that the testimony of plaintiff's most important witness is unreliable, but also think this same indictment can be brought against many of the other witnesses. The major portion of the evidence, including that of the chief witnesses, was taken by the late Judge WAGNER of the court below, and, after his decease, some additional testimony was received by President Judge BIDDLE of the Ninth Judicial District, specially presiding, it being agreed that he should also consider the evidence produced before his predecessor. Under these circumstances, it may be that we are in as good position to pass on the credibility of the principal witnesses, and to draw inferences from their evidence, as was the chancellor who wrote the adjudication and entered the decree; but we are in no better position, and, as we are not convinced that the court below erred in its findings of fact, we shall not disturb them.

The case can be briefly stated as follows: Prior to January 9, 1915, plaintiff owned certain properties in Reading, Pennsylvania, among them No. 146 Hamilton Street, where she then and still resides. The properties were cared for by her son, John Derr, and to this extent he occupied a confidential relation toward his mother; on the date named, she conveyed four of these properties, not including the residence, to her son, the consideration mentioned being one dollar and natural love and affection; the deed, which was duly recorded, was not read or explained to plaintiff, who could not herself read the English language, but, on the other hand, she neither alleged, testified, nor produced evidence to prove that she did not understand the purpose of the instrument or was in any way deceived regarding it or as to the transaction in which it was involved; on the contrary, the substance of her testimony is covered by one answer, where she simply stated, "I gave them [the four properties in question] to him [John Derr] but in trust that he should not sell them as long as I lived," and she also said she was to receive the rents during her lifetime. The court found as a fact that, "At the time of the execution of the said deed and its delivery to John Derr, it was orally agreed between grantor and grantee that John Derr should hold said properties during his mother's lifetime and should pay the net income therefrom to her." It appears, however, that, after carrying out this agreement for a while, John, on March 6, 1917, sold and conveyed the four properties to the defendant, Emma L. Leippe, and the court below finds that the grantee paid John for them the sum of $7,500; also that, at the time of the conveyance, Mrs. Leippe "did not know and had no notice of the oral agreement between the plaintiff and John Derr."

In passing on this appeal, we must take into consideration the facts that the instant suit presents an "attempt to reform or overthrow written instruments," and that defendants, other than John Derr, filed a responsive an-

swer denying the material averments of the bill (Act of May 28, 1913, P. L. 358) ; then, we must also consider the requirements of the statute of frauds, Act of April 22, 1856, P. L. 533, sections 4 and 6.  Thereunder, in a case like the one before us, no oral trust as to real estate can be sustained except as "a resulting trust in favor of another......raised......by actual fraud against the latter, on the part of the grantee, *in obtaining title......;* ....unkept promises, declarations of misrepresentations, which will create a trust ex maleficio, must be made *before or at the time the legal title is acquired......;* [and] the evidence in support of a trust or confidence as to land must be clear, precise and convincing, ...... a mere refusal to perform oral promises [not being] sufficient to raise such a status": Jourdan v. Andrews, 258 Pa. 347, 353, and cases there cited; see also Robertson v. Robertson, 9 Watts 32, 34; Kellum v. Smith, 33 Pa. 158, 164; Silliman v. Haas, 151 Pa. 52, 63; Barry v. Hill, 166 Pa. 344, 348-9; Turney v. McKown, 242 Pa. 565, 568.  When the above considerations are kept in mind and the evidence on this record is compared with the requirements of the law, we realize that, as to the properties dealt with to this point, there is a grave doubt whether the proofs relied on are adequate to raise a trust at all, or to show anything more than an oral bargain made between John Derr and his mother concerning the real estate given by the latter to the former (without any sufficient evidence that this bargain was the inducement to the grant), and the subsequent breaking of that contract by him; hence, so far as the creating of a trust is concerned, it is not clear that the present case falls within the principle of Corrigan v. Conway, 269 Pa. 373, cited by appellant.  Be this as it may, however, the court below having found that Emma L. Leippe, the grantee from John Derr, had no notice, at the time of the conveyance to her, of the alleged prior bargain between him and his mother, and that she did not know Maria Dörr retained, or claimed to retain, any equitable estate

in the properties in controversy, it follows the defendant Leippe, and her grantee, would not be affected by a trust in favor of Maria Dörr even if one existed: Bracken v. Miller, 4 W. & S. 102, 112, 113; Rife v. Geyer, 59 Pa. 393, 397; Heath v. Page, 63 Pa. 108, 122; 39 Cyc. 559; 2 Pomeroy, Equity, (4th ed.) sections 767, 770, 777.

As to the two other properties here in controversy, Nos. 146 and 164 Hamilton Street, which were conveyed on August 21, 1917, by Maria Dörr to John Derr, for a consideration of one dollar and natural love and affection, the court below found that, at the time of the delivery of the deeds to John Derr, he gave to his mother a writing stipulating the terms on which he took title to 146 Hamilton Street, and he then agreed orally that she should receive the net rents from 164 Hamilton Street during her life. There is some dispute in the testimony concerning precisely what this writing was, John stating that it had been lost, and defendant Leippe contending that a paper produced by her at the hearing was the document in question; but the court below decided it was not necessary to go into this question because, in its opinion, "all matters in dispute relative to the property No. 146 Hamilton Street can be disposed of in the action pending in this court on the law side ......, and there should be no interference here with matters there involved." The suit thus mentioned is an amicable action of ejectment with judgment therein, entered on a warrant of attorney contained in a lease to Mrs. Dörr, with the defendant, Emma L. Leippe, as lessor, this judgment having been opened; and the chief contention in the proceeding appears to be that the lease was fraudulently obtained. If this contention should be determined in Maria Dörr's favor, that would be the end of the proceedings; hence we cannot agree with the court below that "all matters in dispute relative to the property No. 146 Hamilton Street can be disposed of" in that action. This being so, we shall have

to reverse the decree to the extent indicated, when entering our final order in the present case.

The court below found, as to 164 Hamilton Street, that it, with No. 146, was sold in October, 1917, by John Derr to Emma L. Leippe for $2,300 and that this consideration was actually paid in cash; further, that the grantee, at the time of the deed to her, "had no knowledge or notice of the oral agreement......between the plaintiff and John Derr relative to 164 Hamilton Street."

There is some testimony in the record concerning a judgment note for $5,000,—signed by Maria Dörr in favor of her son, John,—being a forged document, in that it was raised from $5 to $5,000, and it is contended by counsel for plaintiff that this alleged fraud entered into the conveyance of 146 and 164 Hamilton Street from Maria Dörr to John Derr; but, when on the stand, neither of these parties made it at all clear how this alleged fraud affected that conveyance. This phase of the case, however, is bound up with the question of the sufficiency of the proofs as to the alleged trust, and, owing to the above finding that Emma L. Leippe, when she purchased the property now under consideration from John Derr, had no knowledge of the bargain which it is contended by plaintiff gave rise to such trust, it is not necessary to discuss the matter further (see cases supra); though we take occasion to say that, if the present suit were a controversy between Maria Dörr and her son John only, since he acknowledges the existence of the trust alleged by her, it might well be (under such cases as Hatcher v. Hatcher, 264 Pa. 105, 110, and Kauffman v. Kauffman, 266 Pa. 270, 275) there could be no question for discussion as to the sufficiency of proofs on that score; but third parties being here concerned, who, as the court below has found, did not have notice of the trust when they acquired their titles, John Derr's acknowledgment, by way of evidence to help plaintiff, can-

not affect these parties: Duff v. McDonough, 155 Pa. 10, 14.

We may add that much of the testimony of doubtful probity was produced to show the business relations between John Derr and Emma L. Leippe; it concerns attempts to prove that she took title to all of the properties conveyed by him to her without paying any consideration therefor, and that she was to hold them in trust for his benefit, in order to prevent their confiscation by the United States Government as belonging to an alien enemy, he being, at the time of the transfers, a German subject, and war between that country and this being imminent. Were this a suit brought by John Derr versus Emma Leippe to enforce a secret trust against the latter, it is highly doubtful whether our courts would lend themselves to such an effort to recover property thus hidden, but neither that point nor the credibility of the witnesses need be discussed here, except to repeat, what we said at the beginning of the present opinion, that the record is so full of doubtful testimony, this court is not in a position to disturb any of the findings of the court below, with a conviction of being right.

We may further add, the court below found that "plaintiff's delay in filing her bill was such as to prevent recovery by her in this action against any of the defendants so far as it refers to properties conveyed to Emma L. Leippe on March 6, 1917." The bill was filed July 24, 1922, more than seven years after the properties here mentioned were conveyed by plaintiff to her son, and a little over five years after his deed of them to Mrs. Leippe, but it is not clear from the evidence in the case when plaintiff learned of, or by "reasonable diligence" could have "discovered," the alleged fraud against her; therefore, it may be that the action was commenced within the five-year period fixed by section 6 of the Act of 1856, supra. True, the chancellor found as a fact that Mrs. Dörr learned of the conveyance to Mrs. Leippe within four months after March 6, 1917, which, perhaps,

should have put her on inquiry (see Maul v. Rider, 51
Pa. 377, 384, 385; Maul v. Rider, 59 Pa. 167, 170, 171;
Rider v. Maul, 70 Pa. 15, 21, 22; Frost v. Bush, 195 Pa.
544, 553; Madole v. Miller, 276 Pa. 131, 136, 137);
though the recording of a deed affecting property in
controversy, if that is the character of notice the court
below had in mind, is not always considered sufficient
to put one claiming ownership on inquiry: Maul v.
Rider, 59 Pa. 167, 171; Madole v. Miller, 276 Pa. 131,
136, 137.

So far as the decree appealed from affects properties
other than 146 Hamilton Street, it is affirmed at the cost
of John Derr; so far as it affects the last-named prop-
erty, the decree is reversed and the record is remitted
to the court below with a procedendo.