## O'Neil et al. v. Lex et al.

*Deeds—Building restrictions—Covenants—Recording acts.*

1. Where an owner of land sells a portion of it and covenants in the deed, which is duly recorded, that the remainder of the land shall be restricted for residence only and that the dwellings thereon shall conform, "as far as possible," to the houses built by the grantee, a subsequent purchaser of the remainder of the land, without actual notice of the restriction in the former deed, is not bound by it.

2. In such case, the subsequent purchaser, in searching his title, need look no further into his grantor's deed than to see whether the description covered the land he was buying.

3. The language of the restriction providing that the dwellings to be erected shall conform as far as possible to the houses built by the former grantee of the owner is too vague and indefinite to be enforcible.

Petition for declaratory judgment. C. P. No. 2, Phila. Co., March T., 1927, No. 11782.

*G. V. Strong,* for petitioners and respondents, William Barclay Lex and May B. Lex.

*C. J. Shull,* for John and Marion Conti, Charles and Margaret Conti.

GORDON, JR., J., June 6, 1927.—This is a petition for a declaratory judgment, and the facts are agreed upon. John McCrea owned a piece of land at the corner of Devon Street and Moreland Avenue, in the 22nd Ward of the City of Philadelphia. In 1925, McCrea sold a part of this land to John and Charles Conti, covenanting in his deed to them that the balance of his land should be restricted "for residence only, unless a garage in the rear of any house built thereon, and any such dwelling built thereon shall be at least two and a-half stories high, and each to cost not less than $6500, and to conform as far as possible to the houses built by John Conti on the adjacent lots." The Contis then built two semi-detached houses on their lots. Thereafter, McCrea sold the rest of his land to William Barclay Lex. In the deed to Lex no reference was made to McCrea's agreement with the Contis, and he took without any knowledge of it. Lex then entered into an agreement to sell his land to the plaintiffs, who expected to erect on it four houses in a row. Before the settlement, however, the Contis notified the plaintiffs that the houses they proposed to erect would constitute a violation of McCrea's covenant with them, in that the proposed houses, which are to be in a row, while those of the Contis are semi-detached, would not "conform as far as possible" to their houses. The plaintiffs have, therefore, brought this proceeding to have their rights and duties declared in the event they settle with Lex.

The facts thus presented raise three questions: 1. Did the recording of their deed by the Contis charge Lex, and, therefore, the plaintiffs, with notice of McCrea's covenant contained in it? 2. If so, is that part of the restriction enforceable which requires houses to conform "as far as possible" to those built by the Contis, this being the only part of the restriction it is claimed would be violated? And 3. Would the proposed structures in fact violate the restriction?

After a careful consideration of the arguments of counsel, we are of opinion that all of these questions must be answered in the negative. With respect to the first, it will be noted that the deed containing the restriction is not in the direct line of the plaintiff's title. Concededly, Lex took without actual notice, and, unless the recording acts and the decisions thereunder operate to charge him with notice, he took his title free of the restriction. No case in this State has been called to our attention, nor has our search of the authorities disclosed any, in which the question raised here has been decided. In

O'Neil et al. *v.* Lex et al.

searching his title, Lex would have no reason to look further into the Contis' deed than to see whether the description covered the land he was buying. As it did not, he certainly was not required to read further. He does not claim under the Contis' deed. The land they bought was no more a part of his than any land owned by the common grantor in any other part of the city. It would place an intolerable burden upon a purchaser to require him to search every deed of all his predecessors in title, whether or not it related to the land being bought, in order to be sure that no incidental and collateral agreement was contained in them. It would lead to dangerous consequences and would defeat the principal purpose of the recording acts—the promotion of certainty and ease in the conveying of property. In Maul *v.* Rider, 59 Pa. 167, in which it was held that the record of a deed is not notice to the world, but only to those who are bound to search for it, the court said: "We are bound to apply to the interpretation of this statute that principle in regard to constructive notice which has been so long and well settled, that whatever puts a party on inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, as in case of purchasers and creditors, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding." See, also, Boggs *v.* Varner, 6 W. & S. 469; Barlow *v.* Beall, 20 Pa. 178; Pyles *v.* Brown, 189 Pa. 164. Applying this principle to the case before us, it is difficult to see how Lex should have suspected that in selling one piece of land to the Contis, McCrea would have incidentally encumbered another piece which he owned, and unless such was the case, the recording was not notice to Lex. Restrictions are usually placed upon land granted, not upon land retained, and this indirect and inverted method of creating an easement tends to hide rather than disclose it.

Landell *v.* Hamilton, 175 Pa. 327, and 177 Pa. 23, and Murphy *v.* Ahlberg, 252 Pa. 267, are not in point, because, although restrictions contained in a deed to one parcel of land against another parcel retained by the grantor were enforced, the person against whom they were enforced was in one case the executor of the grantor himself, and in the other a grantee whose deed contained the same restriction and who, therefore, took with actual notice.

While there appears to be no case in Pennsylvania directly covering this question, it has been considered in other jurisdictions, and the weight of authority is in accord with our view. In some jurisdictions their conclusions have been reached, however, from a somewhat different angle. They view a restriction as a purely equitable servitude distinguishable from conveyances of interests that lie in grant, and limit notice of the former to such as are contained in deeds in the direct chain of title. Thus, in Glorieux *v.* Lighthipe, 88 N. J. L. 199, where the owners of two parcels of land conveyed one with a covenant that he would not convey the other except with certain specified restrictions, the court, in holding that a subsequent grantee of the other parcel was not bound by the covenant in the deed to the first parcel, said: "Since the very foundation of an equitable servitude is notice to the purchaser of the servient tenement, the plaintiff's case fails unless the record of the deed to Marsh constitutes statutory notice. If the Marsh deed were in the plaintiff's chain of title, the case would present no difficulty. It is not, and we are confronted with the question of the effect as notice of a prior recorded deed by the same grantor, but for other lands. Prior to the Act of March 23, 1883, P. L. (N. J.) 215; Gen. Stat. 882, pl. 143-145, the effect of the record as notice was determined by principles of equity and was limited to deeds in the chain of title of the person sought to be charged. . . . A purchaser may well be held bound to examine, or neglect at his peril, the record of the conveyances

O'Neil et al. *v.* Lex et al.

under which he claims, but it would impose an intolerable burden to compel him to examine all conveyances made by every one in his chain of title. The case differs from the conveyance of an easement or any interest that lies in grant. A grant takes effect, regardless of notice; an equitable servitude is the creature of equity alone and depends entirely on the existence of notice." See, also, Hancock *v.* Gumm (Ga.), 107 S. E. Repr. 872; Providence Forge Fishing Club *v.* Gill, 117 Va. 557; Thompson *v.* Cole (Texas), 126 S. W. Repr. 923; 39 Cyc., 1719-21.

While there is much force in the distinction made in the cases from outside jurisdictions between purely equitable servitudes and interests lying in direct grant, we do not deem it necessary to enter upon such refinement of reasoning to reach the same result. The recording acts accomplish their valuable purpose only when they are interpreted and applied in such a manner as to make their observance practically possible and their results reasonably safe. To extend the statutory notice to cases such as the present would destroy their usefulness and value and make them more of a burden than a help. We, therefore, conclude that the recording of McCrea's deed to the Contis, which is not a muniment of Lex's title, was not notice to Lex of the restriction therein upon his land and that he can convey to the plaintiffs free of said restriction.

Having reached the conclusion just stated on the first question in the case, the second and third questions are practically eliminated. It may be well, however, to state briefly our reasons for answering them in the negative. As to the second question, we are of opinion that the language of the last part of the restriction is too vague and indefinite to be enforceable. In the first place, when the restriction was created there were no houses on Contis' land to serve as a standard of comparison; there was nothing in existence to which houses built on McCrea's land might be made "as far as possible" to conform. The Contis might build a palace or a hovel on their land, and thus render it impossible or useless to McCrea or his successors to build at all. Again, the restriction is too indefinite with respect to the manner of conformity. How shall the houses conform to the Contis'? In size, in shape, in cost, in material, in number, merely in attractiveness, or in all these ways? Shall the conformity be relative or absolute? To be "as far as possible" in conformity, must they conform absolutely or only substantially? If the Contis alter or rebuild, must the other houses be altered or rebuilt to preserve conformity? It seems to us that the restriction is in every way too vague and indefinite to be effective and enforceable.

Finally, examination of the plan submitted shows that Lex's lot is about four times as large as that of the Contis. The latter could and did build on their lot only two houses, while in proportion Lex could build four. These four, it seems to us, do substantially conform to the Contis' houses, except that they are in a row, while those of the Contis are semi-detached, unless we are to adopt the view that the only way to "conform as far as possible" is to conform absolutely, which would be a contradiction of the idea contained in the words "as far as possible." For the reasons given, therefore, we are of opinion, first, that Lex took his title free of the restriction contained in McCrea's deed to the Contis; second, that the part of the restriction discussed is unenforceable; and, third, that even if the restriction were binding and enforceable, the houses the plaintiff proposes to build would not violate it.