## Barrett *versus* Bamber.

1. Cassin, as trustee for Root, held a ground-rent on which—there being arrears—he sued the original covenantor in the ground-rent deed, Clay being his attorney, and recovered judgment under which the land was sold, and bought by Clay in 1852, for less than the judgment; Clay took a deed in his own name: *Held*, that this raised an implied trust in Clay for the estate he represented.

2. The deed creating the original trust required that no sale of any of the trust property should be made without the approbation of the court. In 1863, Clay sold to Bamber without such approbation and paid the purchase-money to Cassin. Bamber had no actual notice of the trust: *Held*, that he took subject to the trust, having constructive notice from the facts of record.

3. From 1852 to 1863, the title being in Clay, the rents were paid to Cassin. *Held*, that the possession being constructively in Cassin, the limitation of five years in the 6th sect. of the Act of April 22d 1856 (Implied Trusts) did not apply.

4. The sale to Clay under the judgment passed the title to him. free from the *express* trust, and under the circumstances the *cestui que trust*, on reimbursing the amount paid, could have had a reconveyance from Clay, if the claim had been prosecuted within five years.

5. Bamber, after his purchase, holding only under an implied trust, was protected after five years by the limitation in the 6th sect. of the Act of 1856.

6. The Act of March 29th 1865, by which the protection of the 6th sect. of Act of 1856 is repealed in cases of attorneys purchasing for their clients, would have applied as between Cassin and Clay; but not as between Clay and a purchaser from him.

February 28th 1876.  Before SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia:* Of July Term 1874, No. 1864.

This was an action of ejectment, commenced October 28th 1871, by Theodore Barrett, trustee, &c., of Lauretta E. Root, against Alfred Bamber, for a house and lot on Sixth street in the Second ward, Philadelphia.

By deed dated the 31st of August 1836, Andrew Cochran and Hugh Stevenson conveyed the premises in dispute to James

[Barrett *v.* Bamber.]

Kitchen, reserving to the grantors a ground-rent of $56 per annum. By deed dated March 22d 1841, and endorsed on the deed of August 31st 1836, the ground-rent was conveyed to Nathaniel Kennedy and Esther his wife, who by deed dated December 7th 1842, conveyed to James J. Barclay and Casper Morris, in trust for the separate use of Mrs. Kennedy for life, with remainder to the separate use of Mrs. L. E. Root, wife of Marcus A. Root, for her life, with remainder to the children and issue of Mrs. Root in fee, and, in default of issue, to the persons whom Mrs. Root might appoint by will; and, in default of such appointment, to such persons as would be entitled under the intestate laws, &c., with power to the trustees to sell and dispose of the trust property, and to re-invest the proceeds, &c., " Provided, that no such sale, purchase or investment shall be made without the approbation of the Orphans' Court of Philadelphia county."

On the 16th of June 1843, Barclay and Morris were at their own request discharged from the trust, and John Cassin was appointed trustee by the Court of Common Pleas of Philadelphia. Mrs. Kennedy afterwards died. In 1851 Cassin brought an action of covenant on the ground-rent deed against Kitchen for arrears of ground-rent; Joseph A. Clay, Esq., was the attorney on record for Cassin; in this suit judgment for $631.10 was entered June 21st 1851 for the plaintiff for want of an affidavit of defence. Under this judgment the land was sold by the sheriff to Mr. Clay for $100, and deed made to him March 13th 1852. On the 7th of April 1863, Mr. Clay sold the premises to the defendant for $266, subject to the ground-rent of $56. On the 11th of April 1862, Cassin as trustee under the decree of the Orphans' Court of Philadelphia, for the consideration of $933.34, conveyed the ground-rent to the defendant. On the 14th of April 1863, Bamber executed a bond and mortgage on the ground-rent to Cassin, trustee, in pursuance of a decree of the Orphans' Court for $600, the remaining $333.34 of the purchase-money having been paid cash; this mortgage was endorsed by the recorder of deeds "satisfied," February 3d 1864. Cassin died in January 1869, and on the 5th of May of that year Theodore Barrett, the plaintiff, was appointed trustee in his place.

The case was tried before Hare, P. J., January 12th 1874, when the foregoing facts appeared in evidence.

The plaintiff called Joseph A. Clay, Esq., who testified :—

"I was attorney for John Cassin in 1851; I bought the property for the trust estate, because Mr. Cassin was the holder of a ground-rent on the property; I bought to prevent a merger, and took the title in my own name; another reason was, for the purpose of simplicity of conveyance by one; I did this, I presume, at the instance of Cassin; the rents were collected by G. A. Coursault, who was my collector, and also Cassin's; I cannot remember

[Barrett *v.* Bamber.]

whether the rents of this property were paid to me or not; Coursault collected the rents, I presume, for the trust; Cassin authorized the collecting of rents by Coursault at a certain time after purchase; I believe Coursault was authorized to pay the rents to Cassin; as between Cassin and the trust I did not claim to own; so far as I had any power or authority the trust got the rents."

Being cross-examined, he said: "This condition of things continued until I conveyed the property to Bamber. I think this conveyance was in 1863."

The plaintiff here rested.

The defendant gave in evidence searches against Joseph A. Clay and John Cassin, trustee, for ground-rent. He also testified: * * * "I bought the property on or about the 7th of April 1863. * * * I bargained with Mr. Clay through Mr. Coursault, who collected the rents; he is a real estate agent. I had no knowledge, when I bought, that Mr. Clay held for a·trust; I understood from Coursault that he collected the rents for Mr. Clay; I got Mr. H. G. Clay to make the title; I paid the purchase-money in Mr. Clay's office; I paid $600, and gave a mortgage for $600; Mr. Cassin was not there when I paid; I paid Cassin the mortgage; he was pointed out to me eight or nine months after I bought the property; I never had any other transaction with him; I never saw him before the time I paid him the mortgage; I was living on the property; I improved the property between $3500 and $4000; when I bought the property I had no knowledge of Cassin."

Being cross-examined, he said: * * * "When I bargained for the house I was living in the house; it was not more than habitable; I paid the rents to Coursault before I bought the house; I presumed Mr. Clay was landlord; I was under the presumption that Coursault paid the rents to Clay; I did not know that Coursault paid the rents to Cassin; I had no lease for the house; I paid from month to month; Coursault never told me who was the owner; * * * I understood from Coursalt that Clay was the owner; I expressed a desire to buy from the owner; he referred me to Mr. Clay; I employed Mr. H. G. Clay as my conveyancer; it was Mr. Coursault that suggested Mr. H. G. Clay as my conveyancer; I paid the money to young Mr. Clay; I think the old gentleman was in the back office; never saw Mrs. Root, the *cestui que trust*, about the premises—never saw her until I saw her in court at the first trial."

Being re-examined, he said: "The ·first notice I had was the summons in ejectment."

Harry G. Clay, Esq., testified: "I am a member of the bar; I am a nephew of Joseph A. Clay; I was in his office in 1863; I acted as conveyancer in this matter; I had known all the circumstances of the case; Joseph A. Clay had bought and held the title; Mr. Bamber offered to buy; I examined the title for Bamber;

he called to see me ; when all was completed he paid $600 at my office, either to me or to Mr. J. A. Clay direct ; this same amount was paid to Cassin ; Mr. Bamber acquired no knowledge from me of the property being part of the trust ; so far as I know he had no such knowledge ; he knew of the ground-rent being held in trust, and of the extinguishment."

Being cross-examined, he said : "I knew it was not my uncle's property ; I acquired no knowledge in this transaction ; I got it all before."

Joseph A. Clay, Esq., testified further : "Mr. Bamber had no knowledge of the trust ; I regarded the sale as Cassin's ; the sale was made with the approbation of Cassin ; he died before suit was brought ; no account was called for while he lived ; Mr. Coursault treated with me for the sale ; Coursault, in the ordinary course of dealing, came to me and told me the price was a good one. I presume Cassin was consulted ; I have no doubt of it. I never would sell property without Cassin's knowledge. The purchase-money was received from me by Cassin."

The plaintiff testified :—

"I did not, as trustee, receive any money or assets from Cassin's estate. I received funds from the sureties of Cassin. I received about $500, I think, from Mr. Isaac S. Cassin. I think he was surety on administration bond. I recovered it from Mr. Isaac S. Cassin, who was surety for John Cassin in the Orphans' Court. I believe it was on a bond, entered in the Orphans' Court, on sale of a ground-rent by Cassin."

The court directed the jury to find a verdict for the plaintiff, subject to the opinion of the court in banc, upon the points reserved, and to find specially,

1. Whether the defendant had actual notice of the trust.

2. The value of the ground-rent conveyed to the defendant.

3. The amount and value of the permanent improvements put upon the premises by the defendant.

4. The purchase-money paid by defendant for the said premises ; the court in banc to determine whether the verdict shall be on condition that the plaintiff pay the ground-rent principal, and the value of the improvements, and the purchase-money paid by defendant for said premises, or either. The payment by plaintiff, if any, on the conditional verdict, to be made on or before July 1st 1874, in case of a writ of error, within sixty days after final judgment.

The court reserved these points of law :—

1. Whether, as matter of law, the defendant had constructive notice of the trust.

2. Whether the plaintiff's right to recover is barred by the Statute of Limitations.

The jury found for the plaintiff ; and that Mr. Bamber had no

[Barrett *v.* Bamber.]

personal knowledge of any existing trust at the time of the pur-chase.

The finding was "subject to the opinion of the court on points reserved, on condition that the plaintiff pay to the defendant the sum of $1505.83, on or before the first day of July 1874, as per account stated by jury, and hereto attached, with leave to the court to strike out any item or items of the credits therein given to the defendant, if the plaintiff be not legally chargeable with the same."

Appended to the verdict was an account with a detailed statement of the items on each side.

The following opinion of the District Court in banc, adopted by the Supreme Court, was delivered by Hare, P. J., May 16th 1874:

"In the year 1844, a writ of covenant was issued by Mr. Joseph A. Clay, attorney for John Cassin, trustee for the beneficial plaintiff, Lauretta. Root. The suit, which was brought to collect $610, being the arrears of a ground-rent belonging to the trust, went to judgment and execution, and Mr. Clay became the purchaser at sheriff's sale for the sum of $100. He took this step at Cassin's instance, in order to prevent the ground-rent from merging in the land. In the year 1863, Mr. Clay conveyed the premises to the defendant for $266, received the price, and paid it over to Cassin. This sale was made in entire good faith so far as Mr. Clay was concerned, but without obtaining the sanction of the Orphans' Court, as the deed of trust required. The jury were instructed that the purchase by Mr. Clay, being for a less sum than the amount of the judgment, gave rise to an implied trust for the estate which he represented. They found that the defendant bought without actual notice; but we are of opinion that he had constructive notice arising from the facts disclosed of record. It follows that the plaintiff is entitled to judgment unless the case is within the 6th section of the Act of 22d April 1856, which provides that 'no right of entry shall accrue or action be maintained to enforce any implied or resulting trust as to realty,' 'unless within five years after such equity or trust accrued with the right of entry.'

"It is very clear that the act did not begin to run while the title remained in Mr. Clay. During the whole of this period the rent was collected by Cassin's agent, and paid over to him; and it is established under the decisions that the statute does not apply as against one who is in the actual or constructive possession of the land. On the defendant's entry in 1863, the situation changed; and he was thenceforth in undisturbed and adverse possession until action brought. If we believe the verdict, he had no actual notice, and he would consequently be free from liability, but for the implied trust which appeared on the face of his title. If this were all, the statute would confessedly be an answer to the present

[Barrett *v.* Bamber.]

suit. It was, however, contended during the argument that an examination of the record would have shown that behind the implied trust lay an express trust, constituted formally by deed. The defendant became constructively a trustee for Cassin, and as Cassin was under an express obligation to the plaintiff, the case is not, agreeably to this view, within the beneficial operation of the statute. This argument would be just, were it not that the sale under the paramount judgment passed the estate to Mr. Clay, free from the express trust.

"If he had bid the full amount of the judgment he would have acquired a good title of record. The accident of his giving less than the debt which he had been employed to collect entitled the equitable plaintiff and her trustee to demand a reconveyance if they thought fit to reimburse the sum actually paid, but this right was one which the act requires to be prosecuted within five years. As between the plaintiff and Cassin, the trust was express; as between Cassin and Mr. Clay, it arose by a legal implication from his duty as an attorney. This implied trust followed the title into the defendant's hands, but he might justly consider the express trust as discharged. If he had dealt with Cassin the case might have been different, but as he bought from Mr. Clay, without actual notice of Cassin's title, he was, at the most, subject to a constructive trust for Cassin. A chain cannot be stronger than its weakest part, and when the link between defendant and Cassin was broken by the lapse of time, he was no longer bound to plaintiff. The object of the legislature was to guard against the uncertainty of parol evidence, by requiring implied and resulting trusts to be prosecuted while the facts are still fresh in the minds of the witnesses. This object must fail if the numerous estates which are settled or devised in trust are exempted from the operation of the statute. The danger incident to the failure of memory, and the removal of testimony by death, is equally great, whether the legal and equitable title are severed or united.

"We do not regard the case as affected by the Act of March 29th 1865. This repeals so much of the Act of 1856 as provides 'that no right of entry shall accrue,' &c., so far 'as it relates to or protects the title of any attorney at law to any lands purchased or held by him, of or for his client, subject to such trust or trusts.' The title here in question is not the title of the attorney, but of a purchaser from him. It is entirely just that an attorney should not be allowed to plead the statute in bar of a trust arising from a breach of professional obligation. Certainly no such plea would have been set up if the property had remained in the hands of Mr. Clay. But it would be difficult to find any valid reason why one who buys from an attorney should be in a worse position than if he obtained the title from any other source.

"Judgment for the defendant on the point reserved."

[Barrett *v.* Bamber.]

The plaintiff took a writ of error and assigned for error : entering judgment for the defendant on the reserved points.

*E. C. Mitchell* (with whom was *G. W. Spiese*), for plaintiff in error.—The District Court erred in deciding that plaintiff was barred by the Statute of Limitations, Act of 22d April 1856, sect. 6, Pamph. L. 532 ; 2 Br. Purd. 930, pl. 14, viz. :—

Sect. 6. "No right of entry shall accrue, or action be maintained, for a specific performance of any contract for the sale of any real estate, or for damages for non-compliance with any such contract, or to enforce any equity of redemption after re-entry made for condition broken, or to enforce any implied or resulting trust as to realty, but within five years after such contract was made, or such equity or trust accrued, with the right of entry ; unless such contract shall give a longer time for its performance, or there has been in part a substantial performance, or such contract, equity of redemption or trust shall have been acknowledged by writing to subsist by the party to be charged therewith within the same period."

The Act of March 29th 1865, sect. 1, Pamph. L. 56, Id. pl. 15, provides : that "so much of the sixth section of the Act of 22d April, A. D. 1856, as provides that no right of entry shall accrue, or action be maintained, to enforce any implied or resulting trust as to realty, within five years after such trust accrued, be and the same is hereby repealed, so far as it relates to or protects the title of any attorney at law to any lands purchased or held by him of or for his client, under or subject to such trust or trusts."

The trust in question is not within the Act of 1856. It is not an implied or resulting trust, but an express trust. Mr. Clay "bought the property for the trust estate at the instance of Cassin :" Murphy *v.* Hubert, 7 Barr 420.

The trustee, Cassin, was in possession from 1852, when the sheriff conveyed to Mr. Clay, until 1863, when Mr. Clay conveyed to defendant : Clark *v.* Trindle, 2 P. F. Smith 492 ; Williard *v.* Williard, 6 Id. 119 ; Douglass *v.* Lucas, 13 Id. 9.

The trust here, if not express, must arise from the fact that Mr. Clay, as attorney for plaintiff in the suit for ground-rent, endeavoring to collect a judgment for \$610, bought in the property at sheriff's sale for only \$100, and took an absolute title in his own name : Leisenring *v.* Black, 5 Watts 303 ; the case is within the Act of 27th March 1865.

*Geo. Junkin,* for defendant in error.—The trustee, under the circumstances, had authority to buy : Billington's Appeal, 3 Rawle 48 ; and as a consequence, he had power to sell : Oeslager *v.* Fisher, 2 Barr 467, &c.

By the 6th section of the Act of 1856, "Any person, who

[Barrett *v.* Bamber.]

would be sooner barred by this section, shall not be thereby barred for two years from the date thereof." The defendant had consequently a full right to presume that Mr. Clay's title was perfected in April 1858, or five years before his purchase: McNinch *v.* Trego, 23 P. F. Smith 57; Rider *v.* Maul, 20 Id. 15.

The Act of 1865, even if applicable to the case of any holding by an attorney-at-law, as claimed by the plaintiff, cannot affect the title which the defendant had acquired in 1863, two years before its passage: Palairet's Appeal, 17 P. F. Smith 479; Richards *v.* Rote, 18 Id. 248; Baggs's Appeal, 7 Wright 512; Gelpecke *v.* Dubuque, 1 Wallace 206; Walker *v.* Whitehead, 16 Id. 314; Angell on Limit., sect. 22, pp. 14, 15, and notes.

Judgment was entered in the Supreme Court, March 13th 1876,

PER CURIAM.—We affirm this judgment upon the opinion of the learned judge below upon the reserved points.

Judgment affirmed.