## Whitman *v.* O'Brien.

*Execution—Sheriff's sale—Trust and trustees—Resulting trust.*

Where an attorney for execution creditors purchases land at a sheriff's sale for a less sum than the amount of the claims of his clients upon which it is being sold, a resulting trust arises in favor of his clients. They have a right to claim the benefit of the purchase, and to demand a conveyance if they think fit to reimburse the sum actually paid, or an account for the profits in case of a resale. The purchase, however, is not absolutely void but voidable merely at the election of those beneficially interested, the execution creditors. If the execution creditors do not choose to assert their rights, junior judgment creditors have no standing to attack the judgment.

If a creditor takes a judgment, or conveyance, or payment in any form, to secure an actual debt, the transaction will be valid against other creditors, although he knew (1) that the effect would be to postpone the others; (2) that the debtor intended it to have that effect; and (3) although he took it to aid that intent as well as to protect himself. The criterion is not the effect but the fraudulent intent. Without that the transaction cannot be impeached.

To impeach the payment or securing of an actual debt there should be evidence tending to show either, first, some other advantage or benefit to the debtor beyond the discharge of his obligation; or secondly, some other benefit to the creditor, beyond the mere payment of his debt; or lastly, some injury to the other creditors beyond mere postponement to the debt preferred.

The fact that a purchaser at a sheriff's sale permits his debtor to remain in possession of the real estate after the sheriff's sale is not ground for the inference of a fraudulent purpose to hinder, delay, and defraud other creditors of his debtor.

Argued May 15, 1905. Appeal, No. 136, April T., 1905, by M. E. Brindle, from order of C. P. Erie Co., May T., 1901, No. 68, dismissing exceptions to auditor's report in case of Benjamin Whitman v. Joseph P. O'Brien. Before BEAVER,

ORLADY, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Exceptions to report of L. E. Torry, Esq., auditor.

The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*A. E. Sisson*, with him *George E. Gibson*, for appellant.— Rulings have been made by the Supreme Court to the effect that a private or sheriff's sale of property, wherein any benefit in property is reserved to the vendor, is fraudulent and void as to any creditor of such vendor : Hennessy v. The Western Bank, 6 Watts & Sergeant, 300 ; McCulloch v. Hutchinson, 7 Watts, 434 ; McClurg v. Lecky, 3 P. & W. 83 ; Jackson v. Summerville, 13 Pa. 359 ; Fisher's Appeal, 33 Pa. 294 ; McKee v. Gilchrist, 3 Watts, 230.

When evidence has been given tending to establish a combination to defraud creditors, the declarations of either party to it, although not made in the presence of the others, may afterwards be given in evidence : McKee v. Gilchrist, 3 Watts, 230 ; Jackson v. Summerville, 13 Pa. 359 ; Thornburn v. Thompson, 192 Pa. 198.

Under the circumstances in this case the acts and knowledge of Mr. O'Brien in the management of Mr. Carney's claim were the acts and knowledge of Mr. Carney: Jones v. National Building Assn., 94 Pa. 215 ; Wheeler & Wilson Mfg. Co. v. Aughey, 144 Pa. 398 ; Williams v. Kerr, 152 Pa. 560.

*Henry A. Clark*, with him *A. A. Freeman*, for appellee, cited : Werner v. Zierfuss, 162 Pa. 360 ; Mead v. Conroe, 113 Pa. 220.

OPINION BY PORTER, J, October 9, 1905 :

This controversy arises over the distribution of the proceeds of a sale of real estate, by the sheriff under proceedings upon a mortgage, executed and delivered by Joseph P. O'Brien to Benjamin Whitman, dated November 18, 1891, and duly recorded on the 24th of the same month. All parties concede that the mortgage was a valid first lien entitled to be paid out

of the proceeds; the contest is over the surplus. It is unnecessary to consider the rights of Susan Gaffney, who claimed under a judgment against O'Brien, entered while the legal title was in the latter, nor those of Sylvester Carlow, who had been a judgment creditor of James Gaffney prior to the sale of the land to O'Brien by the sheriff; neither of those parties have appealed from the decree of the court below. We have only to consider the conflicting claims of M. E. Brindle, appellant, and James Carney, appellee.

The appellant claims under a sheriff's sale of the land as the property of James Gaffney upon a judgment against him in favor of the John Kauffman Brewing Company, in an action which was commenced June 6, 1891, and in which judgment was entered May 4, 1894. The land in question was sold upon an execution under said judgment, and a deed for the same to T. A. Lamb was duly acknowledged by the sheriff on January 13, 1896. The appellant has by sundry conveyances succeeded to the title, if any, acquired by Lamb, the purchaser, at the sheriff's sale, and by an assignment of the claim to the rights of the John Kauffman Brewing Company, the plaintiff in the judgment.

James Carney, the appellee, claims under an earlier sheriff's sale of the land as the property of Gaffney. Judgments were, on August 18, 1891, entered against James Gaffney in the court of common pleas of Erie county in favor of John Hanley and the Second National Bank of Erie, and the money was subsequently made upon said judgments by the sale of personal property of the defendant upon executions. There was on the same day a judgment entered against James Gaffney in favor of Sylvester Carlow, for $1,612.50, in which Joseph P. O'Brien appeared as attorney for the plaintiff. Carlow was a brother-in-law of Gaffney and the evidence before the auditor would have justified a finding that, although Gaffney was indebted to Carlow in an amount exceeding $800, the judgment was entered for more money than was actually owing. There was, however, no evidence which would have warranted a finding that either O'Brien or James Carney had any knowledge of the excessive amount of the Carlow judgment. On August 19, 1891, four judgments, aggregating about $2,600, were entered against James Gaffney in favor of James Carney,

in each of which Joseph P. O'Brien appeared as attorney for plaintiff. The several amounts for which these judgments were entered were actually due from the defendant to the plaintiff, and there was no evidence which tended to cast suspicion upon the validity of the several claims or the purpose for which the judgments were entered. There was on the same day a judgment entered in favor of the city of Erie against James Gaffney, James Carney and Joseph McCarter, for $496.44, this judgment was entered on a bond given by Gaffney as a collector of taxes, upon which Carney and McCarter were his sureties, and there is no question that Gaffney was actually in default for the amount in which the judgment was entered. Joseph P. O'Brien also appeared as attorney for the plaintiff in this case, and the amount of the judgment was subsequently actually paid by Carney to the representatives of the city of Erie. Executions were issued on the judgment in favor of Sylvester Carlow and one of the judgments in favor of James Carney, upon both of which writs Joseph P. O'Brien appeared as attorney for plaintiff, and the real estate of James Gaffney, including that in question, was regularly sold by the sheriff, on these executions, on November 9, 1891, to Joseph P. O'Brien, and on November 12, 1891, a deed to him was duly acknowledged and delivered by the sheriff. The property did not sell for a sum sufficient to pay either the judgment of Carlow or that of Carney. If this sale to O'Brien was valid, all right and title of Gaffney in the property was extinguished and nothing passed by the sheriff's sale four years later, under which the appellant claims. The appellant asserts that the sale was fraudulent as to creditors.

When O'Brien, while acting as attorney for the execution creditors, purchased the land at the sheriff's sale, for a less sum than the amount of the claims of his clients upon which it was being sold, a resulting trust arose in favor of his clients. They had a right to claim the benefit of the purchase, and to demand a conveyance if they thought fit to reimburse the sum actually paid, or an account for the profits in case of a resale. The purchase, however, was not absolutely void, but voidable merely at the election of those beneficially interested, the execution creditors : Leisenring v. Black, 5 Watts, 303 ; Fisk v. Sarber, 6 W. & S. 18 ; Campbell v. Pennsylvania Life Insur-

ance Company, 2 Wharton, 53; Barrett v. Bamber, 81 Pa. 247; Beeson v. Beeson, 9 Pa. 279; Rich .v. Black & Baird, 173 Pa. 92. The evidence produced before the auditor clearly established that Carlow never elected to assert his right to demand either a conveyance of the property or an accounting, nor did he elect to do so before the auditor. The evidence just as clearly establishes that Carney asserted all along that O'Brien held the property as trustee for him, Carney, alone, that Carney paid out of his own pocket the assessments for municipal liens that were made against the property, that O'Brien always recognized the right of Carney in the property and that on September 16, 1899, he executed and delivered to Carney a quitclaim deed for the same. The auditor found that O'Brien had from the beginning held the title in trust for Carney, and in view of the manner in which O'Brien acquired title and all the evidence in the case we are of opinion that that finding was correct.

The burden was upon the appellant to prove by evidence of a satisfactory character that the sheriff's sale of the real estate under which the appellee claimed was fraudulent. It is not enough to charge fraud and prove in support thereof slight circumstances of suspicion only. The judgment of Carney upon which the property was sold was clearly valid and for a debt actually owing and due, and the proceedings were in all respects regular; if, therefore, his right to this fund is to be defeated, it must be upon the ground that the sale was intended to hinder, delay or defraud other creditors. It was said by Chief Justice MITCHELL in Werner v. Zierfuss, 162 Pa. 360, that "it may be considered as the established result of our cases that if a creditor takes a judgment, or conveyance, or payment in any form, to secure an actual debt, the transaction will be valid against other creditors, although he knew (1) that the effect would be to postpone the others; (2) that the debtor intended it to have that effect; and (3) although he took it to aid that intent as well as to protect himself. The criterion is not the effect but the fraudulent intent. Without that the transaction cannot be impeached." And, again, "to impeach .the payment or securing of an actual debt there should be evidence tending to show either, first, some . other advantage or benefit to the debtor beyond the discharge of his

obligation ; or, secondly, some other benefit to the creditor, beyond mere payment of his debt; or lastly, some injury to the other creditors beyond mere postponement to the debt preferred." There was no evidence that the sheriff's sale was not fair, nor that anything had been done to deter bidders or depress the price, nor that the price realized was inadequate. There was nothing which could even give rise to a suspicion that Carney knew that the judgment of Carlow was for an amount larger than the debt actually due him.   Even if Gaffney had entered into a fraudulent arrangement with Carlow for the purpose of defrauding his creditors, that would not vitiate a sale under the perfectly valid judgment of Carney, who was no party to the arrangement: Fidler v. John, 178 Pa. 112.   The fact that Carney permitted his debtor to remain in possession of the real estate after the sheriff's sale, is not ground for the inference of a fraudulent purpose to hinder, delay and defraud the creditor of his debtor : Mead v. Conroe, 113 Pa. 220.   Carney testified positively that he did not have any understanding with Gaffney in reference to the latter paying his claims and receiving a reconveyance of the property, and that he had never heard that O'Brien had made any such arrangement.   He did say that he had told Mrs. Gaffney, sometime after the sale, that she could have the property if she would let him out clear.   But even if he had made such an arrangement with Gaffney, after the sale, it would have been perfectly lawful: Mead v. Conroe, 113 Pa. 220.   The testimony of Joseph P. O'Brien, which was taken in another case, was read before the auditor by agreement.   That testimony is not altogether clear ; inferences might be drawn from it which would contradict the testimony of Carney, but such conflict of testimony, if any there was, presented a question of fact to be determined by the auditor, who found the facts as testified to by Carney.   The auditor has found that neither O'Brien nor Carney had prior to the sale entered into any agreement which was intended to assist Gaffney to hinder, delay or defraud his creditors, and we are not satisfied that that finding was, under the evidence, erroneous.

The decree of the court below is affirmed.