## Hemminger et al. v. Leidigh et al.

C. A. *Shambaugh* and J. P. *McKeehan*, for plaintiffs.

*John D. Faller, C. S. Brinton, W. A. Kramer, F. B. Sellers, Jr.*, and *E. M. Biddle, Jr.*, for defendants.

REESE, P. J., July 9, 1934.—This is a suit in equity in which the plaintiffs seek a decree directing the reconveyance of certain premises to them by the assignees of Harry M. Leidigh. The matter comes before the court on bill and answer and testimony taken at a hearing before the court. From the evidence adduced we make the following

### Findings of fact

1. On September 4, 1926, Roy M. Anderson and Iva A. Anderson, his wife, executed and delivered to "Harry M. Leidigh, of the Borough of Carlisle, county and State aforesaid, trustee for the holder or holders of the bonds hereinafter secured", a mortgage covering premises more particularly described in the bill filed herein, situate in Lower Allen Township, Cumberland County, said mortgage being recorded in said county in mortgage book 123, p. 74.

2. Said mortgage was given to secure four bonds of $1,000 each.

3. On November 5, 1927, Harry M. Leidigh assigned and delivered for value all said bonds to G. E. Hemminger, S. C. Hemminger, and J. A. Hemminger.

4. G. E. Hemminger died on September 22, 1930, and letters testamentary were duly issued by the Register of Wills of Cumberland County to S. C. Hemminger and J. A. Hemminger, his executors and sole legatees.

5. On July 10, 1933, the executors of G. E. Hemminger assigned his interest in all said bonds to S. C. Hemminger and J. A. Hemminger.

6. The land described in said mortgage was sold at sheriff's sale on November 28, 1930, by proceedings based upon a judgment entered on November 3, 1930, to no. 227, December term, 1930, in the Court of Common Pleas of Cumberland County.

7. Harry M. Leidigh, as attorney for the plaintiffs, procured said judgment on one of the above-mentioned bonds in favor of S. C. Hemminger and J. A. Hemminger and against Roy M. Anderson and Iva A. Anderson, his wife, in the sum of $1,000, with interest thereon from October 1, 1928, and costs.

8. Harry M. Leidigh, while acting as attorney for the plaintiffs in said judgment, caused a writ of fi. fa. to be issued on November 3, 1930, to no. 37, December term, 1930, in said court.

9. The said land was sold by the sheriff to Harry M. Leidigh for the bid sum of $1,000.

10. Harry M. Leidigh paid the sheriff $118.41, representing taxes and costs, and did not pay the sheriff any sum of money other than said amount.

11. In pursuance of said sale, on December 3, 1930, the sheriff executed and delivered a deed for said property to Harry M. Leidigh, said deed being recorded on December 9, 1930, in sheriff's deed book no. 2, p. 130.

12. On April 28, 1933, Harry M. Leidigh made, executed, and delivered a deed of assignment to William A. Kramer and Francis B. Sellers, Jr., for the benefit of his creditors, said deed being duly recorded in deed book I, vol. 11, p. 576, conveying, inter alia, the premises described in the bill herein.

13. Harry M. Leidigh died on October 16, 1933.

### Discussion

It is contended by the plaintiffs that Harry M. Leidigh, in purchasing the premises at a sheriff's sale upon an execution issued by him as their attorney, became a constructive trustee. It appears that Leidigh was attorney of record in the judgment entered on one of the $1,000 bonds owned by the plaintiffs, and, as attorney, caused the writ of execution to be issued. It also appears that, while he bid $1,000 for the premises, Leidigh actually paid the sheriff $118.41. The plaintiffs are still in possession of, and produced in court, the other three $1,000 bonds secured by the mortgage, and it is fair to assume they have never received any of the principal of the four bonds. Disregarding three of the bonds and considering only the one upon which judgment was entered, Leidigh's bid was less than the amount of principal, interest, and cost in the judgment. Certainly his actual payment was less than the amount of the judgment, interest, and costs. It is unconscionable for an attorney to purchase property for his own benefit, unless it be for a sum sufficient to cover the whole amount of his client's demand. To permit him to buy for his own use for a less sum, without the consent of his clients, would be enabling him to make a gain or profit by sacrificing their interests. We believe that under the facts in the present situation Leidigh became, by operation of law, a constructive trustee for the plaintiffs herein.

For this conclusion, there is ample authority. In Bell v. Parrell, 5 D. & C. 387, the court held that if an attorney in an execution purchases the real estate at the sheriff's sale, he becomes trustee for his client. The court said: "It is a well settled principle of law in Pennsylvania that the party occupying a trust relation to another is prohibited from becoming an unconditional purchaser of land in which the other has an interest. This principle is very clearly and concisely laid down in Leisenring v. Black, 5 Watts, 303, and in the reason in support of it plainly stated. We find this rule has been followed in a number of

cases: Beeson *v.* Beeson, 9 Pa. 279; Smith *v.* Brotherline, 62 Pa. 461; Albright *v.* Mercer, 14 Pa. Superior Ct. 63; Barrett *v.* Bambar, 81 Pa. 247."

To the same effect are Henry v. Raiman, 25 Pa. 354; Eshleman v. Lewis, 49 Pa. 410; Whitman v. O'Brien, 29 Pa. Superior Ct. 208. Most of the cases cited involved a situation similar to that in the instant case, an attorney in an execution purchasing the land at a sheriff's sale. In reaching the conclusion that Leidigh became a constructive trustee, we have not been unmindful of the rule laid down by Dörr v. Leippe et al., 286 Pa. 17, and other cases, that the evidence to establish a constructive trust as to land must be clear, precise, and convincing.

If the present suit involved merely the relationship between the plaintiffs and Leidigh and their respective rights and liabilities, our ultimate conclusion would be easily reached. But Leidigh's assignees for the benefit of creditors are defendants, and their rights must be considered. But we believe that if the plaintiffs could successfully assert a constructive trust against Leidigh, they can do likewise against his assignees. This court, in In re Coover, 19 D. & C. 25, said: "an assignee for the benefit of creditors is but a volunteer, and is not a bona fide purchaser for value; he is the mere representative of his assignor, enjoying his rights and no others, and is bound where he would be bound; the assignee is but the hand of the assignor in the distribution of his estate among his creditors. . . .": Potter, Assignee, v. Gilbert, Exec'r, et al., 177 Pa. 159, 168; Duplex Printing Press Co. v. Clipper Publishing Co., 213 Pa. 207, 212; Strawn, Trustee, v. Iams (No. 1), 247 Pa. 132, 134; Gawthrop Co. v. Fibre Specialty Co. et al., 257 Pa. 349, 354."

The remaining defendants in the present suit are judgment creditors of Leidigh who entered judgments against him after he acquired the legal title to the premises involved and before his assignment for the benefit of creditors. We must therefore determine the rights of judgment creditors of one who holds the legal title to land as a constructive trustee. It has always been the law in Pennsylvania that judgments against the owners of the apparent title are not valid as liens upon the equitable titles of others in the land, even though of these equitable titles neither actual nor constructive notice has been given to the judgment creditor before or at his recovery of the judgment: Reed's Appeal, 13 Pa. 475; Shryock v. Waggoner, 28 Pa. 430; Feig et al. v. Meyers, 102 Pa. 10; Sill v. Swackhammer, 103 Pa. 7; McLaughlin v. Fulton, 104 Pa. 161; Landell's Appeal 105 Pa. 152; Kauffman et al. v. Kauffman et al., 266 Pa. 270; Rubinsky v. Kosh, Guardian, et al. 296 Pa. 285. The rule is concisely stated by Chief Justice Gibson in Reed's Appeal, supra, as follows: "If anything is settled by reason and authority, it is, that a judgment-creditor is not entitled to the protection of a purchaser of the legal title against an equitable owner or his creditors, or to any advantage which his debtor had not."

In Kauffman v. Kauffman, *supra*, the rule is stated thus: " 'Judgment creditors are not protected against trusts of which they have no notice, or allowed in equity to hold against the cestui que trust.' "

This rule will therefore govern and determine the rights of the judgment creditors of Leidigh, unless the rule has been changed by some statute enlarging the rights of judgment creditors. In one of the answers filed herein, it was intimated that the judgment creditors were protected under the Act of June 4, 1901, P. L. 425. There is no merit in this contention. The Act of 1901 provides that where a resulting trust shall arise with respect to real property by reason of the payment of the purchase money by one person and the taking of the legal title in the name of another, such trust shall be void and of no effect as to bona fide judgment or other creditors unless a declaration of trust has been recorded or an action of ejectment begun. Our courts have clearly held that

the Act of 1901 is limited to and relates only to resulting trusts of the type described in the act, and is not applicable to any other type of resulting trust nor to a constructive trust: Rosa v. Hummel, 252 Pa. 578; A. B. Dick Co. v. Third National Bank et al., 17 D. & C. 549. Clearly, the trust in the instant case was not a resulting trust of the type described in the Act of 1901.

The defendants did not press the foregoing contention at the oral argument but at that time contended that under the Act of June 12, 1931, P. L. 558, amending the Act of May 12, 1925, P. L. 613, judgment creditors are now given the same protection as subsequent bona fide purchasers or mortgagees. The Act of 1931 provides that "all deeds, conveyances, contracts, and other instruments in writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth," upon being properly acknowledged, shall be recorded, and "shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or holder of any judgment, duty entered in the prothonotary's office of the county in which the lands, . . . are situate, without actual or constructive notice," unless such instruments in writing are recorded before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim.

But it must be carefully noted that, under the Act of 1931, unrecorded written instruments creating interests in land are void as against subsequent bona fide purchasers and mortgagees or holders of judgments. In the present case, the interest of the plaintiffs was not created or conveyed to them by any written instrument but is based upon a constructive trust arising by legal implication. Where an attorney becomes a constructive trustee for his clients under such circumstances as existed in this case, the clients have no written instrument which they can place of record and thus protect themselves against those who subsequently deal with the attorney.

We cannot, therefore, agree with counsel for the defendants that the Act of 1931 has changed the rule that a judgment creditor without notice cannot prevail against a secret trust imposed upon the land of his debtor. We find applicable the statement by the court in Rosa v. Hummel, 252 Pa. 578, 580, in construing the Act of 1901, supra: "However beneficial it might be, to extend the scope of the law, as suggested by counsel for appellant, such relief should come from the legislature, rather than through a forced construction of the statute by the courts."

Finally, the defendants contend that the plaintiffs are barred by laches. With this contention, first raised on the oral argument, we cannot agree. The doctrine of laches in equity is constantly compared to the statute of limitations and its operation in actions at law. By the Act of March 27, 1865, P. L. 56, the Act of April 22, 1856, P. L. 532, which established a 5-year limitation upon actions brought to enforce implied or resulting trusts as to realty, was repealed "so far as it relates to, or protects, the title of any attorney at law, to any lands purchased, or held by him, of, or for, his client, under, or subject to, such trust, or trusts."

This amendment clearly shows a legislative intent that a client should not be deemed guilty of laches under the circumstances which exist in this case.

Moreover, it is well settled that where there is a relationship of trust and confidence and an abuse of it, as in this case, the statute of limitations does not begin to run until the discovery of the fraud: Pennsylvania Company for Insurances on Lives, etc., v. Ninth Bank & Trust Co., 306 Pa. 148, 155. There

is no evidence in this case that the plaintiffs herein had knowledge of the breach of trust by Leidigh for such substantial time before the institution of this suit as to charge them with laches. Nor can it be said that the recording of the sheriff's deed to Leidigh constituted constructive notice to the plaintiffs. "Recording is constructive notice only to those who are bound to search for it: *subsequent* purchasers and mortgagees, and, perhaps, all others who deal with or on the credit of the title, in the line of which the recorded deed (or mortgage) belongs": Kinch et ux. v. Fluke et al., 311 Pa. 405, 409; Dörr v. Leippe et al., 286 Pa. 17; Madole v. Miller, 276 Pa. 131; Maul v. Rider, 59 Pa. 167.

For the foregoing reasons, we conclude that the plaintiffs are entitled to a decree directing the conveyance of the premises in question to them. In reaching this conclusion, we have not considered the incompetent testimony of S. C. Hemminger. But it is only fair and just that the plaintiffs reimburse the assigned estate of Leidigh by the amount of $118.41 which was advanced by Leidigh when he purchased the property, and the decree will be conditioned upon such reimbursement.

### Conclusions of law

1. The purchase of the mortgaged premises by Harry M. Leidigh at sheriff's sale for a sum less than the amount of the debt, interest, and costs represented by the judgment on which he procured execution to issue as attorney for his clients, the plaintiffs herein, was a legal fraud upon his clients, and in equity he took title as a constructive trustee for the plaintiffs herein.

2. The rights of the defendants, the assignees of Harry M. Leidigh for the benefit of his creditors and the defendants who hold judgments against Harry M. Leidigh, rise no higher than the rights of Harry M. Leidigh himself.

3. The plaintiffs herein were not guilty of laches.

4. The assigned estate of Harry M. Leidigh is entitled to be reimbursed by the plaintiffs in the sum of $118.41.

### Decree

And now, July 9, 1934, it is adjudged and decreed that Harry M. Leidigh has held the title to the premises described in the bill herein as trustee for the plaintiffs, S. C. Hemminger and J. A. Hemminger; and William A. Kramer and Francis B. Sellers, Jr., assignees of said Harry M. Leidigh, are hereby directed and ordered to grant and convey said premises to said S. C. Hemminger and J. A. Hemminger by a good and sufficient deed of conveyance, freed and discharged of all encumbrances, except those to which the premises were subject at the time of the conveyance thereof to said Harry M. Leidigh; provided, however, that said S. C. Hemminger and J. A. Hemminger shall first pay to said assignees the sum of $118.41, with interest thereon from November 28, 1930, and if such payment is not made within 30 days after final·decree herein the bill is dismissed.

The prothonotary is directed to notify counsel for each party herein forthwith of the entry of this decree nisi, which shall become the final decree unless, within 10 days after such notice, exceptions are filed to the court's findings of fact, conclusions of law, or this decree nisi.

From Francis B. Sellers, Carlisle, Pa.